NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

ANDREA MAZARA,

                    Plaintiff,

                v.

EXPERIAN INFORMATION
SOLUTIONS, INC., TRANS UNION
LLC, and NEWREZ LLC d/b/a
SHELLPOINT MORTGAGE
SERVICING,

                    Defendants.

Case No. 2:24-cv-09778 (BRM) (AME)

**OPINION**

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is Defendant Newrez LLC d/b/a Shellpoint Mortgage Servicing's ("Shellpoint") Motion to Dismiss (ECF No. 22) Plaintiff Andrea Mazara's ("Plaintiff") Complaint (ECF No. 1), filed pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff filed an Opposition (ECF No. 29), and Shellpoint filed a Reply (ECF No. 30). Having reviewed and considered the submissions filed in connection with the Motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause having been shown, Shellpoint's Motion to Dismiss (ECF No. 22) is **GRANTED**.

## I.   BACKGROUND

### A.   Factual Background

For the purposes of this Motion to Dismiss, the Court accepts the factual allegations in the Amended Complaint as true and draws all inferences in the light most favorable to Plaintiff. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). The Court also considers any

"document *integral to or explicitly relied* upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Digit. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

In or around September 2006, Plaintiff obtained a mortgage for her property located at 82 Grand Avenue, Apt. 1, Newark, New Jersey 07106. (ECF No. 1 ¶ 10.) On July 4, 2019, Plaintiff filed for Chapter 13 bankruptcy (*id.* ¶ 11), and, on August 14, 2020, Plaintiff's Chapter 13 payment plan was confirmed (*id.* ¶ 12). Sometime thereafter in 2020, Shellpoint acquired the mortgage loan as a new servicer. (*Id.* ¶ 13.) On January 17, 2022, Gregory Funding, another mortgage servicer, acquired the loan from Shellpoint (the "Shellpoint Mortgage"). (*Id.* ¶ 14.) On June 20, 2022, the Trustee for Plaintiff's Chapter 13 bankruptcy filed a Chapter 13 Standing Trustee's Final Report and Account (*id.* ¶ 15), and, on July 21, 2022, Plaintiff was discharged from her Chapter 13 bankruptcy with the mortgage previously serviced by Shellpoint excepted from the discharge (*id.* ¶ 16). While Shellpoint is not the current mortgage servicer, Plaintiff still resides in the home and makes timely and regular mortgage payments to the applicable mortgage servicer. (*Id.* ¶ 19.)

At some point in February 2024, Plaintiff obtained her three-bureau credit report and asserts the Experian and Trans Union credit report(s) were not accurate.[1] (*Id.* ¶ 20.) Plaintiff claims the Experian credit report improperly reported the Shellpoint mortgage account, arguing the report incorrectly indicated that "this secured debt was no longer part of the bankruptcy, as derogatory, as being in a wage earner plan and with references to the Chapter 13 Bankruptcy," despite her having complied with the terms of the Chapter 13 bankruptcy and the mortgage being excepted.

---

[1] Defendants Trans Union LLC ("Trans Union") and Experian Information Solutions, Inc. ("Experian"), were originally named in the Complaint, but the claims against each defendant were settled. (ECF Nos. 8, 14.) Both companies were subsequently and voluntarily dismissed with prejudice. (ECF Nos. 32, 35.)

(*Id.* ¶ 21.) Plaintiff states "any remarks and/or references to Plaintiff's [C]hapter 13 bankruptcy should have been removed from the NewRez-Shellpoint Mortgage tradelines after the Bankruptcy was discharged." (*Id.*) Plaintiff claims the Trans Union credit report also incorrectly reported the Shellpoint mortgage account as it indicated that "this secured debt was no longer part of the bankruptcy, as derogatory, as open when the account was closed and transferred, and as being in a wage earner plan and with references to the Chapter 13 Bankruptcy," despite her having complied with the terms of the Chapter 13 bankruptcy and the mortgage being excepted. (*Id.* ¶ 23.) Plaintiff similarly asserts "any remarks and/or references to Plaintiff's [C]hapter 13 bankruptcy should have been removed from the NewRez-Shellpoint Mortgage tradelines after the Bankruptcy was discharged." (*Id.*)

In or around June 2024, Plaintiff sent direct disputes to Experian and Trans Union, requesting, under the Fair Credit Reporting Act ("FCRA"), that these consumer reporting agencies ("CRAs") conduct a reasonable investigation into the alleged inaccurate reporting of the Shellpoint Mortgage. (*Id.* ¶ 25.) Plaintiff also requested the CRAs remedy the inaccuracies on her credit reports. (*Id.*) Upon Plaintiff's information and belief, Experian did not respond to the dispute. (*Id.* ¶ 27.)

On September 10, 2024, Plaintiff obtained an updated copy of her three-bureau credit report. (*Id.* ¶ 28.) As to the Experian credit report, she noticed the Shellpoint tradeline continued to denote the same inaccuracies previously disputed. (*Id.*) Plaintiff asserts the responses, or lack thereof, by Experian "were not the result of a reasonable investigation into Plaintiff's dispute(s) and failed to remedy the inaccuracies . . . and gave no explanation as to why it failed to sufficiently update the []Shellpoint tradeline . . . because it was still open following the bankruptcy discharge." (*Id.* ¶ 29.) As a possible theory for the continued alleged misreport, Plaintiff alleges Experian

forwarded some notice of the dispute to Shellpoint, but the lack of updated reporting was due to Shellpoint failing to conduct a lawful investigation. (*Id.* ¶ 35.)

As to the Trans Union Credit report, the Shellpoint tradeline was missing and was "presumably deleted rather than modified to closed without an bankruptcy indicators." (*Id.* ¶ 37.) Plaintiff asserts the responses, or lack thereof, by Trans Union "were not the result of a reasonable investigation into Plaintiff's dispute(s) and failed to remedy the inaccuracies . . . and gave no explanation as to why it failed to sufficiently update the []Shellpoint tradeline . . . because it was still open following the bankruptcy discharge." (*Id.* ¶ 38.) As a possible theory for the continued alleged misreport, Plaintiff similarly alleges Trans Union forwarded some notice of the dispute to Shellpoint, but the lack of updated reporting was due to Shellpoint failing to conduct a lawful investigation. (*Id.* ¶ 43.)

On October 15, 2024, Plaintiff filed a Complaint against Shellpoint alleging violations of the FCRA, 15 U.S.C. § 1681s-2(b). (*Id.* ¶¶ 72–75). Plaintiff alleges Shellpoint violated the FCRA "by failing to conduct reasonable investigations upon receiving notice of Plaintiff's dispute(s) from one or more consumer reporting agencies, and/or failing to appropriately report the results of their investigations, and/or failing to appropriately modify the information." (*Id.* ¶ 72.)

**B.    Procedural History**

On October 15, 2024, Plaintiff filed the Complaint. (ECF No. 1.) On January 3, 2025, Shellpoint filed a Motion to Dismiss the Complaint. (ECF No. 22.) On January 30, 2025, Plaintiff filed an Opposition. (ECF No. 29.) On February 11, 2025, Shellpoint filed a Reply in further support of its Motion to Dismiss. (ECF No. 30.) On March 6, 2025, Shellpoint filed a Notice of Supplemental Authority (ECF No. 33), and, on March 10, 2025, Plaintiff filed a Response to the Notice (ECF No. 34).

## II.    LEGAL STANDARD

### A.    Rule 12(b)(6)

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the non-moving party]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (alteration in original) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555 (citations omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). This "plausibility standard" requires the complaint to allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* (citing *Twombly*, 550 U.S. at 556). "[D]etailed factual allegations" are not required, but "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" must be pleaded; it must include

"factual enhancement" and not just conclusory statements or a recitation of the elements of a cause of action. *See id.* (citations omitted). In assessing plausibility, the court may not consider any "[f]actual claims and assertions raised by a defendant[.]" *Doe v. Princeton Univ.*, 30 F.4th 335, 345 (3d Cir. 2022).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)). After *Iqbal*, conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555). To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible, "allow[ing] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556, 570). The Supreme Court's ruling in *Iqbal* emphasizes that plaintiffs must show that the allegations of their complaints are plausible. *See id.* at 670.

## III.   DECISION

Shellpoint asserts Plaintiff fails to state an actionable claim under the FCRA. (ECF No. 22-1 at 1.) Shellpoint argues the company's reported tradeline is accurate, and, as a threshold issue, there must be inaccurate information in the report for Plaintiff to have a viable suit. (*Id.* at 4.) Although there is an alleged failure to update reporting after Plaintiff's bankruptcy discharge, Shellpoint states "the FCRA does not require a furnisher to update historically accurate

information once an account is closed," and, likewise, "there is no basis under the FCRA to remove historically accurate information simply because that information is negative." (*Id.* at 7.) Accordingly, Shellpoint stands by its Chapter 13 notation on reported tradelines as accurate. (*See id.* at 8.)

In her Opposition, Plaintiff "alleges that Shellpoint, who serviced her loan beginning in 2020 until January 7, 2022, furnished and continues to furnish inaccurate information about her secured mortgage account to two consumer reporting agencies." (ECF No. 29 at 1.) Plaintiff claims this "temporary information" is something that "can only be present while a consumer is in an active bankruptcy," and, as such, the information "fails to indicate that the secured mortgage debt is no longer part of the bankruptcy." (*Id.* at 1–2.) Plaintiff contends she has adequately pled her claim and has met all three required prongs under the FCRA to proceed forward. (*Id.* at 7.) Plaintiff argues her situation is different than those in the cases cited by Shellpoint as her tradeline is reported as "Account Status: Open" on the Trans Union credit report, which is "not accurate because the Shellpoint account is closed and transferred," while also being reported as "closed as of 10/30/2020" in the Experian credit report. (*Id.* at 9–11.) Plaintiff claims her contention is supported by *White v. Flagstar Bank, F.S.B.*, Civ. A. No. 24-0177, 2024 WL 5360095 (D.N.J. Nov. 7, 2024), arguing "there was no way for a reasonable reader to think that the plaintiff [in that case] was in a pending bankruptcy because by looking at the entirety of [that plaintiff's] credit report because it was clear that the account was closed, and that the bankruptcy information was historical information." (*Id.* at 11.) Plaintiff argues the opposing information present in this case, as compared to *White*, is misleading to a lender as "[d]ifferent readers could make more than one reasonable interpretation to materially affect her creditworthiness," and the tradeline "cannot be both open and closed in the past." (*Id.* at 12.) Plaintiff also states the credit reports do not specify

the mortgage was transferred, which further makes the reporting as inaccurate. (*Id.* at 13.)

In Reply, Shellpoint states "[i]t is well-settled in this Circuit that a credit report should be read in its entirety to arrive at a reasonable interpretation." (ECF No. 30 at 2 (citing *Bibbs v. Trans Union* LLC, 43 F.4th 331, 344 (3d Cir. 2022)).) Shellpoint disagrees with Plaintiff's characterization of the interpretation of the credit report and argues "no one reading her credit report could reasonably conclude that the Shellpoint loan, which is reported as 'closed' and with a zero balance, is still subject to Chapter 13 bankruptcy" since "Plaintiff's report makes abundantly clear that her bankruptcy is over." (*Id.*) Shellpoint also notes Plaintiff's Opposition "is largely devoid of case law" and relies on "decisions from New York, which predate *Bibbs* by three years." (*Id.*) Shellpoint argues the closed account is due to Trans Union's response to her dispute as the company "deleted the Shellpoint tradeline, which is an appropriate response to an alleged inaccuracy." (*Id.* at 6 (citing *Driscoll v. Cmty. Loan Servicing, LLC*, Civ. A. No. 24-0526, 2025 WL 315959 at *2 (D. Minn. Jan. 28, 2025) ("[D]eleting an item of information in response to notification of a dispute is expressly allowed under § 1681s2(b)."); *Davenport v. Capio Partners LLC*, Civ. A. No. 20-01700, 2021 U.S. Dist. LEXIS 81077, at *22 (M.D. Pa. Apr. 28, 2021) ("[T]radeline deletion is one of the three expressly authorized courses of action that a furnisher <u>must</u> take upon discovering inaccurate or incomplete information following a dispute, . . . and . . . the FCRA [does not] prohibit a furnisher from deleting the tradelines for closed accounts in response to a dispute.")).) Lastly, Shellpoint contends any claim Plaintiff may be trying to assert related to perceived errors in the September 10, 2024, credit report is not actionable because while the Complaint does include this report and specifies it as inaccurate, it merely states Plaintiff submitted disputes related to the February 2024 credit report. (*Id.* at 7.) In support, Shellpoint cites to *SimmsParris v. Countrywide Fin. Corp.,* 652 F.3d 355, 359–60 (3d Cir. 2011) for the

proposition that when a plaintiff fails to first lodge a dispute with the CRAs, there is no private right action then against a furnisher. (*Id.*)

"The FCRA places certain duties on those who furnish information to consumer reporting agencies." *SimmsParris*, 652 F.3d at 357. § 1681s-2(b) imposes duties on furnishers of information when they receive *notice* of a dispute, including the requirement that they "conduct an investigation with respect to the disputed information," and, if the investigation finds the information to be incomplete, inaccurate, or unverifiable, the furnisher of the information is required to notify all consumer reporting agencies to which the information was furnished and modify, delete, or permanently block the reporting of the information. 15 U.S.C. § 1681s-2(b); *see also Gibbs v. SLM Corp.*, 336 F. Supp. 2d 1, 11 (D. Mass. 2004) (holding § 1681s-2(b) imposes a duty upon furnishers of information "to undertake an investigation upon receipt of notice of dispute from a consumer reporting agency" (citation omitted)). To adequately allege a claim under § 1681s-2(b) of the FCRA, "a plaintiff must demonstrate three specific elements: '(1)[the consumer] sent notice of disputed information to a consumer reporting agency, (2) the consumer reporting agency then notified the defendant furnisher of the dispute, and (3) the furnisher failed to investigate and modify the inaccurate information.'" *Paredes v. Sallie Mae*, Civ. A. No. 11-2470, 2011 WL 5599605, at *6 (D.N.J. Nov. 16, 2011) (quoting *Cosmas v. Am. Express Centurion Bank*, Civ. A. No. 07-6099, 2010 WL 2516468, at *8 (D.N.J. June 14, 2010)).

Once a furnisher is put on notice under § 1681s-2(b), the furnisher must:

> (1) conduct an investigation with respect to the disputed information; (2) review all relevant information received from the CRA; (3) report the results of the investigation to the CRA; and (4) if the information is found to be inaccurate or incomplete, report the results to all CRAs to which it originally provided the erroneous information.

*Esperance v. Diamond Resorts*, Civ. A. No. 18-10237, 2022 WL 1718039, at *5 (D.N.J. May 27,

2022) (quoting *Van Veen v. Equifax Info.*, 844 F. Supp. 2d 599, 604 (E.D. Pa. 2012) (citing 15 U.S.C. § 1681s–2(b))). A post-notice investigation must be reasonable. *Seamans v. Temple Univ.*, 744 F.3d 853, 864 (3d Cir. 2014) (citations omitted). However, before a court can consider the reasonableness of a furnisher's investigation, "it must first determine that the disputed information was in fact inaccurate." *Bibbs*, 43 F.4th at 344. As such, information "may nonetheless be inaccurate if, through omission, it creates a materially misleading impression." *Id.* at 343.

The FCRA mandates that all information reported must be accurate. *See Salvador v. FedLoan Servicing*, No. 20-20568, 2021 WL 5422292, at *4 (D.N.J. Oct. 28, 2021). Indeed, "[n]umerous courts in the Third Circuit and across the nation have found that, where the parties provide the reported information in dispute and the court determines only one reasonable interpretation of the report exists, a court may determine the accuracy of the report as a matter of law." *Id.* (internal citation and quotation marks omitted) (collecting cases). Importantly, the reporting of historical information, including the status of an account as of the time it was closed or transferred, is not considered inaccurate or misleading. *White*, 2024 WL 5360095, at *4; *Salvador*, 2021 WL 5422292, at *4 (holding "the mere reporting of historical information on a closed account" is not "inaccurate or misleading"); *Egues v. NelNet Servicing LLC*, Civ. A. No. 21-802, 2021 WL 3486904, at *3 (D.N.J. Aug. 9, 2021) (noting when the credit report is read "as a whole, it is clear that the information [defendant] provided is historical and regards [p]laintiff's accounts as of May 2015 when they were closed/transferred to another servicer"); *see also Samoura v. Trans Union LLC*, Civ. A. No. 20-5178, 2021 WL 915723, at *4 (E.D. Pa. Mar. 10, 2021) (stating information is not inaccurate when the account is closed).

The Third Circuit has further explained this stance when holding "a reasonable interpretation" of a credit report listed as closed is historical information, and past statuses on a

closed account are not inaccurate for reporting purposes under Section 1681e(b). *Lucero v. Equifax Info. Servs. LLC*, Civ. A. No. 24-5338, 2025 WL 615129, at \*5 (D.N.J. Feb. 26, 2025) (citing *Bibbs*, 43 F.4th at 344). In fact, "[t]he FCRA expressly permits CRAs 'to report certain categories of negative credit information . . . for up to seven years after those events occur.'" *Harrari v. Experian Info. Sols., Inc.*, Civ. A. No. 21-3337, 2023 WL 2634402, at \*2 (D.N.J. Mar. 24, 2023) (internal citations omitted) (citing 15 U.S.C. § 1681c (a)(2)-(5)); *see also Gibbs v. Lending Club Corp.*, Civ. A. No. 19-3330, 2021 WL 5033484, at \*4 (N.D. Ga. Sept. 14, 2021) (holding the furnisher did not violate the FCRA by failing to update its report to specify that a Chapter 13 bankruptcy was filed after the account was transferred to another party); *Terhune v. Bank of Am., N.A.*, Civ A. No. 18-1440, 2018 WL 6249982, at \*2 (S.D. Ind. Nov. 28, 2018) ("[T]he Defendant is not currently reporting inaccurate information, and the Plaintiff has failed to articulate why the Defendant should amend a report that was accurate at the time it was issued."). This reasonable reader standard "creates a lens viewed by a reasonable reader, not a reasonable creditor, who reads the Plaintiff's credit reports." *White*, 2024 WL 5360095, at \*4. Courts in the Third Circuit are therefore instructed to "apply[] the reasonable reader standard to determine the accuracy of an entry in a report . . . [by] mak[ing] such a determination by reading the entry not in isolation, but rather by reading the report in its entirety," and in an objective manner, not a subjective one. *Bibbs*, 43 F.4th at 342, 345.

Under the reasonable reader standard, the Court does not find the reports in question to be misleading. In terms of Experian's reporting the account as closed, "[a] reasonable reader, when considering the reports in their entirety, would understand that Plaintiffs' credit report listing (1) their creditor remarks as in 'Chapter 13' bankruptcy, and (2) their account rating as 'derogatory,' was historical information pertaining to a closed account." *Lucero*, 2025 WL 615129, at \*6

(citing *White*, 2024 WL 5360095, at *5). As held in *White* for analogous claims against historical reporting of a closed account, a reasonable reader would understand the reports read in its entirety to be historical and accurate information due to the account status being listed as closed. *White*, 2024 WL 5360095, at *5 ("Here, a reasonable reader reading the report in its entirety would clearly comprehend the report made by Flagstar to be historical, past information since the account is listed as closed. Thus, the information on Plaintiff's credit report is clear and accurate and not misleading to a reasonable reader. Though Plaintiff contends the bankruptcy notation on her credit report should have been removed after the bankruptcy was discharged . . ., Plaintiff fails to account for the fact that a reasonable interpretation of these reports in their entirety would show that it is historical information, and that Plaintiff was not in active bankruptcy." (citation omitted))

Although the Trans Union report still lists the tradeline as open at the same time as Experian designates it as closed, which differs from the aforementioned cases, the Court does not find this allegedly conflicting information to be misleading to a reasonable reader when the report is read in its entirety. Anyone reviewing the credit report in the Complaint can see both Trans Union and Experian listing the account as being initially opened on September 6, 2006. (ECF No. 1-7.) Trans Union states the date the account was last verified, the date of last activity, the date reported, and the date of last payment—all as December 31, 2021. (*Id.*) Experian states the date of last activity as October 1, 2020, and the date reported as October 31, 2020. (*Id.*) Both tradelines show outstanding balances are $0. (*Id.*) Plaintiff has stated the mortgage was originally secured in September 2006 (*id.* ¶ 10), Shellpoint acquired the loan in 2020 (*id.* ¶ 13), and, in January 2022, Gregory Funding, acquired the loan from Shellpoint (*id.* ¶ 14). Plaintiff was discharged from her Chapter 13 bankruptcy in June 2022. (*Id.* ¶ 16). Given this information, a reasonable reader would not be misled by such information, as Trans Union's open status on the credit report is historically

accurate to the time Shellpoint serviced Plaintiff's loan, and a reasonable reader could discover that Shellpoint transferred the mortgage account to another lender and that the bankruptcy was discharged. *See supra* at 10–12. Experian's closed status is similarly not misleading or inaccurate to a reasonable reader, regardless of Trans Union's reporting. *See Lucero*, 2025 WL 615129, at *6; *White*, 2024 WL 5360095, at *5. Finally, Shellpoint is under no obligation to update historical accurate information. *See Bibbs*, 43 F.4th at 344. As such, when a reasonable reader views the credit report in its entirety, there is no misleading or inaccurate information provided by Shellpoint.

Accordingly, Shellpoint's Motion to Dismiss is **GRANTED WITH PREJUDICE**.[2]

## IV.    CONCLUSION

For the reasons set forth above, Shellpoint's Motion to Dismiss (ECF No. 22) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. An appropriate Order follows.

/s/ Brian R. Martinotti
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**

Dated:  August 6, 2025

---

[2] Although Plaintiff has not requested leave to amend, the Federal Rules of Civil Procedure generally require the Court to "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15. "In the Third Circuit, plaintiffs whose complaints fail to state a cause of action are entitled to amend their complaint unless doing so would be inequitable or futile." *Lovallo v. Pacira Pharms., Inc.*, Civ. A. No. 14-06172, 2015 WL 7300492, at *14 (D.N.J. Nov. 18, 2015) (citing *Fletcher-Harlee Corp. v. Pote Concrete Contrs., Inc.*, 482 F.3d 247, 252 (3d Cir. 2007)). "An amendment is futile if the amended complaint would not survive a motion to dismiss." *Cnty. of Hudson v. Janiszewski*, 351 F. App'x 662, 666 (3d Cir. 2009) (citing *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000)). Here, the Court finds any such amendment would be futile. Since Shellpoint's reporting has been found historically accurate and not misleading under the reasonable reader standard, there are no further details Plaintiff could provide that would allow an amended claim to survive a motion to dismiss.